# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BARRY D. STEIN, ET AL.** | : | |
| | : | |
| | : | |
| **V.** | : | **CIV. ACTION NO.  3:19-cv-1634 (VLB)** |
| | : | |
| | : | |
| **MELISSA J. NEEDLE, ESQUIRE,** | : | |
| **ET AL.** | : | **DECEMBER 8, 2021** |

### DEFENDANT JENNIFER STEIN'S
### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
### MOTION FOR SUMMARY JUDGMENT

The defendant, JENNIFER STEIN ("Mrs. Stein"), respectfully submits this memorandum of law in opposition to plaintiffs' motion for summary judgment.

### Preliminary Statement

Plaintiffs' motion for summary judgment seeks judgment as a matter of law against Mrs. Stein and her divorce attorneys (the "Needle Defendants")  on the novel theory that a wife who accesses a family desktop in the family home looking for marital assets and financial information relevant to a possible divorce is aware that such conduct is wholly "unauthorized" as a matter of law, and further, that the wife's conduct, even if done without an intent to access a computer unlawfully, constitutes a federal and state computer crime.  Plaintiffs contend that such a conclusion is compelled on the facts of this case because Mrs. Stein did not access the information using her own account on the desktop, but instead used her husband's separate user account to access the information, and then allowed her divorce attorney's paralegal, Ms. Calise, access to the computer to copy data that the paralegal believed might be relevant to the

divorce.  Consistent with these facts, the evidence and Special Master's report confirm that some of the data copied contained marital financial information that Mrs. Stein was authorized to have as a spouse.  Nevertheless, plaintiffs rest their computer crime theory primarily on the undisputed fact that Ms. Calise also inadvertently copied some data that contained protected health information for patients (PHI)—sensitive data that neither Mrs. Stein nor Ms. Calise believed was stored or accessible from the computer.  The copying of PHI was clearly not intended by Mrs. Stein, or by Ms. Calise, and plaintiffs have not argued to the contrary.  Moreover, there is no evidence that the desktop was damaged, that the PHI was damaged, or that the PHI was shared with anyone beyond the parties to this case.  In fact, the Special Master has issued a final report stating that all PHI has been accounted for and he has recommended that the data that was inadvertently copied be destroyed.[1]

Summary judgment should be denied on the computer crime counts (Counts I and II) for the simple reason that there are material issues of disputed fact concerning whether Mrs. Stein—as Dr. Stein's spouse—had a right or some authority to access the shared family desktop.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) ("a person who uses a computer 'without authorization' has no rights, limited or otherwise, to access the computer in question."); *Van Buren v. United States*, 141 S. Ct. 1648, 1658 (2021) (agreeing

---

[1] **The Needle Defendants, with the consent of Mrs. Stein, have filed a Motion to Adopt the Special Master's Recommendation and for Remediation.  That motion remains pending.  *See* ECF No. 192.  No action to permanently destroy the data can be taken until plaintiffs petition the family court to vacate its prior order prohibiting "modifying, altering, deleting, wiping, or in any way removing or changing" the PHI.**

with defendant that the "without authorization" clause, protects computers themselves by targeting so-called outside hackers—those who "acces[s] a computer without any permission at all.").   In this case, although plaintiffs suggest that the desktop was a computer used for Dr. Stein's work at Fairfield Anesthesia Associates (FAA), the evidence at this point suggests that the desktop computer was also used and accessed by multiple people in the home, to include Mrs. Stein and the Stein children.  Plaintiffs actually concede that Mrs. Stein had her own user account on the computer, and Mrs. Stein has submitted declarations under oath that the Stein minor children used the desktop, including, for example, to play computer logic games associated with chess lessons with their private chess instructor.  *See* <u>Exhibit A</u>, J. Stein Decl., ¶5.  The chess instructor has even submitted a declaration confirming that he sat at the desktop with one of the minor children while teaching chess and showed one of the Stein minor children how to use a logic game on the desktop.  *See* <u>Exhibit B</u>, Aldi Decl. ¶¶ 3-7.  In light of the foregoing, a jury might well conclude that multiple people were allowed to access the desktop computer at issue in this case, a finding that precludes Computer Fraud and Abuse Act (CFAA) liability for accessing a "computer" without authority.  *See*, *e.g.*, *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1126–27 (N.D. Fla. 2019) (granting summary judgment in favor of defendant on CFAA claim, in part, because evidence showed that "(1) the computer was kept in common parts of the marital residence where it could be (and in fact was) used by both husband and wife, and thus (2) it was jointly-owned marital property that the parties had mutual access and authority to use.").

3

Because their theory of liability is undermined by mutual access to the desktop computer, plaintiffs carefully narrow the access issue further, and instead argue that Mrs. Stein did not have authorization to access a particular area of the desktop computer—*i.e.*, Dr. Stein's separate user account—an area that they label the "protected area" of the computer.[2]  This narrowing of the issue should be construed as a concession by plaintiffs that Mr. Stein had a right and/or some authority to access the desktop computer itself.  With that understanding, a central issue on the computer crime counts is whether Mrs. Stein "exceeded" her authority by accessing data using her husband's user account on the computer.

Summary judgment is inappropriate on this issue as well because a jury should decide whether Mrs. Stein's status as Dr. Stein's spouse, coupled with the nature of their relationship and how they handled access to devices and passwords within the home, gave her some authority to access her husband's account <u>on a shared family computer</u>.  In other words, there are disputed issues of fact as to whether Mrs. Stein—and by extension, the Needle Defendants— should have <u>known</u> that they had <u>no right</u> to access Dr. Stein's account, or whether, as defendants' contend, they reasonably believed that they had authority to access the computer at the time.  Framed in this way, the intent of the parties and the understanding between Dr. and Mrs. Stein regarding access to the

---

[2] Because the CFAA and the Connecticut Computer Crime Law (CCL) were primarily concerned with outside "hackers"—individuals who had no access to the computer whatsoever—the CFAA and the CCL state that the "without authorization" requirement relates to access to the "computer" itself, not some particular area of the computer.

desktop are inextricably intertwined with the access and authorization issues that underlie the CFAA and CCL claims.  These issues should go to a jury; they are not appropriate for summary judgment.  *See Gelb v. Bd. of Elections of City of New York*, 224 F.3d 149, 157 (2d Cir.)(2000) ("summary judgment is generally inappropriate where questions of intent and state of mind are implicated") (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985)); *see also Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984) (same); *Coelho v. Posi–Seal International, Inc.*, 208 Conn. 106, 113 (1988) (determining the parties' intention is within the province of the jury: it is "the *raison d'etre* of the jury system").

Finally, the motion for summary should be denied for other reasons.  <u>First</u>, there are issues of fact surrounding whether plaintiffs can prove $5,000 or more in compensable damages during a one-year (1) period.  *See* 18 U.S.C. 1030(c)(4)(A)(i)(l).  The CFAA narrowly constrains those types of damages which constitute compensable damages under the act, and plaintiffs' evidence does not satisfy the threshold, as discussed below.  <u>Second</u>, plaintiffs have not carried their burden of proving as a matter of law that they owned the computer at issue, as required to prove a violation of the CCL under Count II.  <u>Third</u>, plaintiffs cannot prove as a matter of law that Mrs. Stein owed a duty of care, given that there are disputed issues as to whether it was foreseeable to Mrs. Stein and the Needle Defendants that there would be PHI on the desktop computer.  <u>Fourth</u>, even if Mrs. Stein did breach a duty to plaintiffs, there are material issues of fact as to whether and to what extent plaintiffs were contributorily negligent for the incident that forms the basis of their claims.  Contributory negligence is a question of fact,

and Connecticut courts have held that any degree of fault on the part of the plaintiff is sufficient to preclude summary judgment. *See*, *e.g.*, *Schnelwar v. Stamford Hosp.*, 2020 WL 3791577, at *2-3 (Conn. Super. Ct., Jun. 1, 2020) (Provodator, J.T.R.) ("The level, if any, of the plaintiff's comparative negligence is a quintessential factual issue, for the factfinder to determine). <u>Fifth</u>, even Mrs. Stein and the Needle Defendants owed a duty and were negligent, Connecticut law requires that a jury apportion fault among the Needle Defendants and Mrs. Stein. *See* Conn. Gen. Stat. §52–572h(f) ("[t]he jury ... shall specify ... the percentage of negligence that proximately caused the injury ... in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury...."; *Bradford v. Herzig*, 33 Conn. App. 714, 723, 638 A.2d 608, 612 (1994) ("It is clear from the language of the statute that the jury is entitled to attribute and divide the percentage of negligence only among parties to the action.").

For any or all of the foregoing reasons, summary judgment should be denied.

<u>Background</u>

Defendant Jennifer Stein and her husband, Dr. Barry Stein, are embroiled in a protracted divorce action in the Stamford Superior Court, commenced in 2018. *See Jennifer Stein v. Barry Stein*, Docket No.: FST-FA18-6035933-S.[3] Not long before the commencement of the state court divorce action, Mrs. Stein decided to look for household financial information on a shared desktop computer kept in a

---

[3] The Court previously took judicial notice that the state court docket shows that a divorce complaint was filed on April 16, 2018.

home office at the former marital home in Westport, Connecticut (the so-called "Subject Computer").

The Subject Computer was first installed in or about November 2014. Eventually, Dr. Stein and Mrs. Stein each had their own password-protected user accounts on the Subject Computer.  Prior to installing the Subject Computer, Dr. and Mrs. Stein shared an Apple desktop computer and an iPad.  In addition to Dr. and Mrs. Stein, the two Stein children, E.S. and J.S, also used the Subject Computer.  According to Mrs. Stein, the children used it to print documents in the home office, and they used the Subject Computer for chess lessons with a private instructor.  *See* Exhibit A, J. Stein Decl. ¶5; *see also* Exhibit B, Aldi Decl. ¶5 ("I distinctly remember one occasion showing E.S. how to use the Deductoid game on the desktop, and I was sitting next to him while he used the game on the desktop computer.").

In addition to sharing the Subject Computer and other electronic devices during their marriage, the Steins shared or exchanged passwords, which were used to access personal smart phones, bank accounts, a shared Apple iPad, and the family computers.  *See* Exhibit A, J. Stein Decl. ¶6.  On occasion, when one of them did not know the password or needed to be reminded of a password, they would tell or text the password to the other.  *See id.*

Consistent with Mrs. Stein's recollection, there is evidence already in the record that, in August 2016, Mrs. Stein texted Dr. Stein asking for the password to the Subject Computer and he freely gave it to her.  In a December 2020 declaration, Mrs. Stein provided a copy of the actual text message.  *See* ECF Nos.

119 (previously filed under seal) & 185.  Plaintiffs responded to this evidence, not by claiming that it was legally irrelevant, but instead by claiming that the text exchange had nothing to do with the Subject Computer.  Instead, plaintiffs submitted a declaration from the computer technician used by the Steins, Mr. Manjoney, who interpreted the text has having to do with sharing the administrative password for E.S.'s laptop.  *See* Pl's Exhibit C, ECF No. 184, Manjoney Decl. ¶10.  More recently, however, Mr. Manjoney has testified that it was his interpretation only, and he took that position because he did not believe E.S. ever used the Subject Computer.  *See* <u>Exhibit D</u>, Manjoney Dep. at 130-133, 168-173.  Mrs. Stein's attached declaration, and an attached declaration from E.S.'s chess teacher, show that Mr. Manjoney's assumption is not reliable.  *See* <u>Exhibit A</u>, J. Stein Decl. ¶7; <u>Exhibit B</u>, Aldi Decl. ¶¶ 3-7.  Mr. Manjoney also agreed that, if E.S. was using the Subject Computer to play a game or download something, that would explain the need for the administrative password as shown in the August 2016 text.  *See id. at* 168-173.  In her declaration submitted in opposition to the motion for summary judgment, Mrs. Stein reiterates that she remembers the August 2016 text exchange was about gaining administrative access to the entire Subject Computer so that her son could update or install or update something related to his chess lessons in 2016.  In other words, the exchange related to gaining access to the Subject Computer, not her son's laptop.  *See* <u>Exhibit A</u>, J. Stein Decl. ¶7.

It is against this backdrop of a marriage marked by mutual access to devices and shared passwords that Mrs. Stein chose to access the Subject

Computer and look for household financial information kept on Dr. Stein's user account. On April 2, 2018, Mrs. Stein logged in to Dr. Stein's Microsoft Windows user account on the Subject Computer. She used a password that Dr. Stein had shared with their son the night before while she was present. She testified at her deposition that the password was shared while Dr. Stein was helping their son with his Microsoft Xbox. *See* Pl's Ex A, ECF No. 163, J. Stein Dep. at 76-78. Dr. Stein did not disclose it secretly or try to keep it from her for any reason, and he has not submitted any affidavit or testimony denying that he did so.

With regard to her state of mind and intent in accessing the account, Mrs. Stein believed that, as Dr. Stein's spouse, and given how they handled passwords and electronic devices during the marriage, she could access household financial information stored on the Subject Computer under his user account. *See* Exhibit A, J. Stein Decl. ¶11. She had been given administrator-level access to the computer in the past as well. See id. It is true that she testified at her deposition that she was "upset" and "scared" when she decided to go looking for the information in Dr. Stein's user account, but she explained that she was "scared" for multiple reasons. In addition to her discomfort about using his password to get information for a divorce, she was "scared of finding out that finances were messed with." Pl.' Ex A, ECF No. 163, J. Stein Depo. at 94-95. But even though she did not want Dr. Stein to know that I was looking for our financial information, she did not believe she was doing anything "wrong in the legal sense." *See id.* at 113-14. In other words, she still believed that she had some authority to access

family asset and financial information on the Subject Computer, even if he chose to keep it on his separate user account.  *See* Exhibit A, J. Stein Decl. ¶11.

After she accessed Dr. Stein's account, she called the Needle Cuda law firm and was put in contact with Jessica Calise, a paralegal.  Mrs. Stein testified that she told Ms. Calise "that I had a secretive husband, I think I tried a password, and I see all these icons, and I think my finances are there," and she "didn't know what to do next."  *See* Pl.'s Ex A, J. Stein Dep. at 89-90. Mrs. Stein testified that Mrs. Calise asked her if she knew how to "copy it," but Mrs. Stein said did not have the know-how to do so.  See id.  Thereafter, Ms. Calise agreed to come to the Stein residence and assist Mrs. Stein.

After Ms. Calise arrived, Mrs. Stein re-entered the password with Ms. Calise present.  Ms. Calise then looked for information that might be relevant to the divorce and she copied the data to an external hard drive.  Ms. Calise decided what to copy and did the actual copying, not Mrs. Stein.  Ms. Calise then took the hard drive back to the Needle Cuda offices and

Neither Mrs. Stein nor Ms. Calise had any reason to believe that FAA PHI was accessible via the Stein Family Computer.  *See* Exhibit E, ECF No. 113, J. Stein Dec., ¶ 6.  Neither had any intent to copy PHI.  *See id.*

The Needle Cuda law firm maintained possession and custody of the copied data on its computer system.  Mrs. Stein did not handle any of the data and had no direct control over how it was handled at the Needle Cuda law firm. *See* Pl.'s Ex A, ECF No. 163, J. Stein Dep. at 147-49.

During the divorce action, the Needle Defendants sent a Dropbox link containing a link to the copied data to Dr. Stein's matrimonial attorneys. *See* **Exhibit F**, ECF NO. 113, J. Calise Decl ¶5.  Dr. Stein's matrimonial attorneys sought injunctive relief in the divorce action by the filing of an "Application for Emergency Ex-Parte Temporary Injunction, Pendente Lite" on July 29, 2019. *See* Exhibit G, ECF No. 42-2, Needle Aff. ¶5.  On July 30, 2019, the trial court (Heller, J.) granted the application, in part, by enjoining Mrs. Stein and her attorneys and agents from "modifying, altering, deleting, wiping, or in any way removing or changing" the data and ordering the data to be returned to Dr. Stein and his divorce counsel.  Judge Heller did not grant more extraordinary relief, to include an examination of the Needle Cuda law firm's computer system to ascertain how the data had been handled. *See id.*

The instant federal court action was filed in October 2019 seeing monetary and injunctive relief for Computer Fraud and Abuse Act (CFAA) violations, violation of the Connecticut Computer Law, negligence, and negligent supervision.

## Summary Judgment Standard

The heavy burden that a moving party bears on a Fed. R. Civ. P. 56 motion for summary judgment is well-settled.  In a motion for summary judgment, the burden is on the moving party to establish that no genuine issues of material fact remain in dispute and that it is thus "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law" and a factual issue is "genuine" if "a reasonable jury

could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).   "In ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) *quoting Anderson*, 477 U.S. at 255.  This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151.   "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences form the facts are jury functions, *not those of a judge.*"  *Anderson*, 477 U.S. at 255 (emphasis added); *accord Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996).   Put another way, "[i]f there is *any* evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (emphasis added; internal citations and quotations omitted).   Only where there is no evidence upon which a jury could properly render a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, may summary judgment lie. *Washington v. Dewey*, 433 F. Supp. 3d 334, 344 (D. Conn., Jan. 10, 2020) (Bryant, J.).

**This Court's Prior Rulings**

Plaintiffs essentially argue that this Court should decide their Motion for Summary Judgment consistent with this Court's prior rulings on Defendants' Motion to Dismiss, ECF No. 123, *and* the parties' competing motions to compel the other to bear the costs of the Special Master's investigation, *see* ECF No. 122. These decisions, however, were rendered under different legal standards that are wholly inapplicable to summary judgment.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This requires the district court to draw all reasonable inferences in favor of the non-moving party – at that time, the Plaintiffs in this case. *See Menkes v. St. Lawrence Seaway Pilots' Ass'n*, 269 Fed. Appx. 54, 55 (2d Cir. 2008). With respect to summary judgment, however, the district court must construe the evidence in the light most favorable to the party opposing the motion – in this case, <u>the defendants</u> – and drawing all reasonable inferences in favor of that party. *See Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011), *cert. denied*, 566 U.S. 1010 (2012). Once again, it is not the function of the district court on summary judgment to make credibility determinations, weigh evidence, nor draw inferences. *See Anderson*, 477 U.S. at 255. As set forth at length herein, this case is rife with issues that are simply not amenable to summary judgment.

The standard governing a district court's power to allocate a special master's compensation has even less applicability here.  "Under Rule 53(a) of the Federal Rules of Civil Procedure, the district court may charge the special master's compensation against one or more of the parties or apportion it among them.  The district court has broad discretion to determine which of the parties to charge, and the district court's decision will not be disturbed absent an abuse of that discretion."  *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir. 1987), *reh'g denied*, (6th Cir., 1987) (internal citations omitted), *cert. denied*, 484 U.S. 820 (1987).  Because such motions are governed by an abuse of discretion standard, it necessarily follows that a district court may make credibility determinations, weigh evidence, and draw inferences when deciding a motion pursuant to Fed. R. Civ. P. 53(a) – <u>none of which can be done when ruling on a motion for summary judgment</u>.  *See Anderson*, 477 U.S. at 255.  Indeed, in a footnote to this Court's decision on the parties' competing motions to compel the other to bear the costs of the Special Master's investigation, the Court held that "[t]his allocation may be amended once a decision on the merits is rendered.  *See* Rule 53(g)(3)."  ECF No. 122, at 10, n. 3.  Thus, while that prior ruling was adverse to the defendants, this Court made clear that the decision <u>was not on the merits</u>. The Court's findings made in connection with that motion practice therefore do not dictate or control the outcome of Plaintiffs' Motion for Summary Judgment.

## Argument

I.   **SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT I BECAUSE THERE ARE MATERIAL ISSUES OF FACT AS TO WHETHER MRS. STEIN WAS AUTHORIZED TO ACCESS THE SUBJECT COMPUTER**

Summary judgment as to Plaintiffs' CFAA claim (Count I) should be denied for the simple reason that there are material issues of fact as to whether Mrs. Stein was authorized to access the Subject Computer under the circumstances of this case.    The CFAA only prohibits "access[ing] a computer *without authorization*" or in a manner which "*exceeds authorized access*."   18 U.S.C. § 1030(a)(2)(C) (emphasis added); *accord Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 417-18 (S.D.N.Y., Oct. 17, 2018) (Gorenstein, J.).  To "exceed[] authorized access" requires "access[ing] a computer with authorization and [] us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  The Second Circuit has interpreted the term "without authorization" in accordance with its common usage – *i.e.*, access to a computer by an individual without permission to do so at all.  *See United States v. Valle*, 807 F.3d 508, 524 (2d Cir. 2015); *see also LVRC Holdings LLC v. Brekka*, 581 F.3d at 1133 ("a person who uses a computer 'without authorization' has no rights, limited or otherwise, to access the computer in question.").  The term "exceeds authorized access" was recently clarified by the United States Supreme Court in the case of *Van Buren v. United States*, 141 S. Ct. 1648 (2021).  In *Van Buren*, the Supreme Court considered whether an individual who was authorized to access a computer data for a certain purpose nevertheless violates the CFAA's prohibition on "exceed[ing] authorized

access" if he or she accesses the same computer data for an improper purpose. 141 S. Ct. 1648, 1649-52 (2021).  The Supreme Court answered in the negative, holding that the computer data at-issue must be totally off-limits to the individual before he or she can "exceed authorized access" within the meaning of the CFAA.  *See id*.  The Supreme Court described this as a "gates-up-or-down" approach.  *See id.* at 1649, 1658-59.  "On this reading, if a person has access to information stored in a computer – e.g., in "Folder Y," from which the person could permissibly pull information – then he does not violate the CFAA by obtaining such information, regardless of whether he pulled the information for a prohibited purpose."  *Id.* at 1654.

To specifically respond to the contention that she did not intentionally access the Subject Computer without believing she had any authority whatsoever, Mrs. Stein has provided a declaration that (1) she believed she had authority to access the family desktop, (2) during their marriage, she and Dr. Stein shared computers and an Apple iPad, (3) Dr. Stein shared his passwords with Mrs. Stein and other family members to allow access to the desktop, and (4) even though she did not want Dr. Stein to know what she was doing—because it related to a possible divorce—she believed she had the right and some authority to look for marital financial information on the computer, even if it was stored on her husband's separate user account.  *See* Exhibit A, J. Stein Decl., ¶¶ 3-7.  In fact, Dr. Stein admitted that he kept family-related financial information and photos on the desktop under his user account, and he would have given the information to Mrs. Stein if she, or her divorce attorneys, had requested it.  *See*

16

**Exhibit C**, B. Stein Dep. at 49-52; *id.* at 52 ("She had the option of asking me for them, and I would have given them to her if she didn't have them….").

Mrs. Stein further disputes plaintiffs' contention that Mr. Manjoney told her that she was not permitted to access her husband's subaccount on the Subject Computer, and she denies that she was told by Mr. Manjoney that she and Dr. Stein had separate user accounts "to protect the business assets of Dr. Stein's account with respect to FAA." *See* Pl.'s Ex A, ECF No. 163, J. Stein Dep. at 50. Moreover, in her declaration, she states that she does not recall any formal, group "family meeting" in the family home in November 2014 involving the entire Stein family and Mr. Manjoney where instructions about how to access the Subject Computer were given. *See* Pl.'s Ex C, ECF No. 181, Manjoney Decl. ¶¶10-11 (discussing November 2014 meeting); *see also* ECF No. 114-5, Barry Stein Decl. ¶10 (discussing November 2014 meeting). What she actually recalls is that, at some point, Mr. Manjoney showed her how to log in to her user account and how to access her email using the Subject Computer. *See* **Exhibit A**, J. Stein Decl. ¶8.

Mr. Manjoney's narrative is also questionable, as it has evolved over time. In his first declaration, submitted in December 2020, he claimed that the entire family was at a group "family meeting" in November 2014 where everyone was shown how to access the Subject Computer, and the children were given their own laptops around that time. *See* Pl.'s Ex. C, ECF No. 181, Manjoney Decl. ¶¶10-11. At his recent deposition, however, he admitted that he could not "recall specifically any conversations about the [Subject Computer] with family

members" at the November 2014 meeting.  *See id.* <u>Exhibit D</u>, Manjoney Dep. at 98-99.  He also disclosed that his prior declaration statement was not "a hundred percent accurate," because what he claimed to have occurred in the November 2014 meeting with the Stein family actually occurred in a later meeting in April 2015 when Mrs. Stein was given her user account on the Subject Computer and the Stein children received their own laptop computers.  *See id.* at 94, 99, 101-102.  After he testified to this, Mrs. Stein located an email from Mr. Manjoney, which suggests that he is also mistaken about the April 2015 meeting, as the Stein children did not receive their laptops until much later.  In an email sent to Mrs. Stein in September 2015, the subject of which is "Laptops, XBox, Meeting," Mr. Manjoney discusses the boys being "anxious to get their laptops" and he offers up possible times when he might be able to bring the laptops to the house and help them set up the laptops.  *See* <u>Exhibit A</u>, J. Stein Decl. ¶9, Attachment 1.  This email suggests that Mr. Manjoney's recollection about the various family "meetings" is not entirely consistent or reliable.  At a minimum, a jury should hear the testimony from the witnesses and decide who is reliable and who is not when it comes to these "meetings' and what was said concerning use of subaccounts and accessing the Subject Computer.

To the extent that Dr. Stein maintains that he intended to keep things in his user account "private," that is not enough to show a lack of authority under the computer crimes statutes.  Courts that have looked at the privacy that exists between spouses have found no invasion of privacy when one spouse searches through another spouse's folders and documents on a family computer, "either

because there is no 'reasonable' expectation of privacy where a single computer is used by multiple people in the home, or because of special considerations when the home is occupied by children, or because a spouse (or other family member) is deemed to have given 'implied' consent." *Luis v. Zang*, No. 1:12-CV-629, 2018 WL 1724898, at *15 (S.D. Ohio Apr. 6, 2018); *White v. White*, 344 N.J. Super. 211, 223, 781 A.2d 85, 92 (Ch. Div. 2001) ("A person's expectation of privacy to a room …  and to which others have keys and access is not reasonable.").

In this case, the issue is whether the marital relationship between Dr. and Mrs. Stein, the use of a shared family computer, and Dr. Stein's sharing of passwords during the marriage, all combine to demonstrate that Mrs. Stein was not "exceeding" any authority by accessing Dr. Stein's account when he was not home.  Although Dr. Stein has testified and made statements previously under oath that he never shared his password "with anyone," *see*, *e.g.*, Exhibit C, B. Stein Dep. at 145, that now seems to be a less than credible statement, and cannot be used as a basis to grant summary judgment.  Moreover, his own summary judgment motion appears to concede that he shared the password with his son while Mrs. Stein was present and able to hear it.  The fact that it may have been "intended" for Mrs. Stein's son—an intent that Dr. Stein has not even acknowledged in testimony or a declaration—does not change the analysis.  It would be illogical and a novel use of the computer crime statutes to say that a minor child would have more authority to access a shared computer using a parent's password than the other parent/spouse.  Moreover, under the rule of

19

lenity, the computer crime statutes should be applied "only to conduct clearly covered," *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999), and not turned into a statutory weapon to criminalize computer use within the home among family members.

The fact remains that, once Dr. Stein's password or an administrative password was entered into Dr. Stein's user account, a person would have user access to everything on the account, a circumstance confirmed by Mr. Manjoney. *See* Pl.'s Ex C, ECF No. 181, Manjoney Decl. ¶19.   Only one password was necessary.  All of this is enough to raise an issue of fact for the jury as to whether the conduct shows that a computer crime occurred, or whether, as defendants contend, Mrs. Stein used a shared password to access a shared computer to which she had access to look for marital financial information that—except for PHI—even Dr. Stein agrees she had a right to see.

Plaintiffs alternatively argue that, even if Mrs. Stein had authority to access Dr. Stein's user account to access household financial information, Mrs. Stein— and by extension her attorneys—clearly did not have authority to access PHI on the computer.  *See* ECF No. 158, Pl.'s Mem. at 22 ("Under that scenario . . . Defendants would have clearly exceeded their authority in accessing and copying the FAA files on Dr. Stein's Subaccount.").  To be clear, we do not claim to have authority to intentionally access and copy PHI.  But the Supreme Court's decision in *Van Buren* holds that there is a "gates-up-or-down" test that applies under the CFAA when assessing access.  "[O]ne either can or cannot access a computer system, and one either can or cannot access certain areas within the system."

20

141 S. Ct. at 1658-59.  If the PHI was stored locally on the desktop—which is what was found by the Special Master in its analysis of the computer—then the PHI was accessible simply by having access to Dr. Stein's user account.  In other words, this fact pattern is akin to a situation whereby Mrs. Stein had access to her husband's home office with a key, and she accessed it to allow her attorneys to obtain and preserve financial information.  The fact that someone inadvertently grabbed papers that contained PHI would not, in and of itself, transform the entire access of the home office into a criminal trespass or some other crime.  In other words, the fact that PHI was copied in this case—an act that was done unintentionally—does not make the entire access unauthorized *ab initio*; nor does it make the entire access criminal.  To be sure, there may be other theories of liability to address inadvertent or negligent copying of information while accessing a computer—and plaintiffs have alleged other causes of action here— but the mere inadvertent copying of PHI is not a per violation of the CFAA and CCL.[4]

II.   **SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT I BECAUSE THERE ARE DISPUTED ISSUES OF FACT AS TO DEFENDANTS' KNOWLEDGE AND INTENT AT THE TIME OF THE ALLEGED ACCESS**

In order to obtain summary judgment on their CFAA claim, Plaintiffs also have the burden of establishing that there are no material issues of fact that Mrs. Stein and/or the Needle Defendants <u>knowingly</u> accessed the Subject Computer

---

[4]  Likewise, even if Mrs. Stein's accessing of Dr. Stein's user account without his prior knowledge and for a purpose that he did not approve in advance was a "breach of marital trust"—an observation made by this Court in one of its earlier rulings,  *see* ECF No. 122 at 12—that is not the same thing as being "unauthorized" within the meaning of the CFAA and CCL.

without authorization <u>and</u> that they did so <u>with the intent to defraud plaintiffs</u>. Plaintiffs have not done so, and indeed, they cannot do so.  *See, e.g.*, *Sawant v. Ramsey*, 2010 WL 3937403, at *16 (D. Conn., Sept. 28, 2010) (Bryant, J.) ("[I]ssues of motive and intent are usually inappropriate for disposition on summary judgment."); *Halperin v. Halperin*, 215 B.R. 321, 330 (E.D.N.Y., Nov. 3, 1997) (Duberstein, J.) (intent to defraud an issue of fact not suited to motion for summary judgment).   Summary judgment as to Plaintiffs' Count I should therefore be denied.

The CFAA provides for civil liability where a person, *inter alia*, "<u>knowingly and with intent to defraud</u>, accesses a protected computer without authorization or exceeds authorized access . . . ."  18 U.S.C. § 1030(a)(4) (emphasis added); *accord Cenveo, Inc. v. Rao*, 659 F. Supp. 2d 312, 315-16 (D. Conn., Sept. 30, 2009) (Arterton, J.) (setting forth the required elements of a civil CFAA claim).[5]  This means that a plaintiff must prove that the defendant knew that the access was unauthorized at the time that the access took place.  *See Sell It Soc., LLC v. Strauss*, 2018 WL 2357261, at *3-4 (S.D.N.Y., Mar. 8, 2018) (Castel, J.) (denying summary judgment in plaintiff's favor where defendant contended that he did not know that his access was unauthorized).  A plaintiff must further prove that the

---

[5] Neither "knowingly" or "intentionally" are specifically defined by the CFAA. Therefore, the Court should apply the "fundamental canon of statutory construction . . . <u>that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.</u>"  *Perrin v. United States*, 444 U.S. 37, 42 (1979).  In addition, because the CFAA is principally a criminal statute, it is subject to the rule of lenity, which instructs district courts to "resolv[e] ambiguity in a criminal statute <u>as to apply it only to conduct clearly covered.</u>"  *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (emphasis added) *quoting United States v. Shabani*, 513 U.S. 10, 17 (1994).

defendant engaged in the unauthorized access with the specific intent to defraud the plaintiff. *See Sachdev v. Singh*, 2016 WL 768861, at *10, n. 5 (S.D.N.Y., Feb. 26, 2016) (Peck, J.). ("[I]ntent to defraud . . . is a required element of 18 U.S.C. § 1030(a)(4).").  To that end, "[c]ourts have interpreted 'defraud' under the CFAA as meaning wronging one in his property rights by dishonest methods or schemes." *City of Mount Vernon v. Davis*, 2019 WL 1367685, at *7 (S.D.N.Y., Mar. 26, 2019) (Briccetti, J.) (citation and quotations omitted).  A defendant must have therefore intended to wrongfully obtain property from the plaintiff via the unauthorized access. *Id.*  As a corollary, a plaintiff cannot prove "intent to defraud" by merely showing that an unauthorized access has taken place. *See P.C. Yonkers, Inc. v. Celebrations The Party and Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir.2005).

    <u>First</u>, Mrs. Stein has submitted a declaration that she believed she was allowed to look for household financial information stored on Dr. Stein's user account. *See* <u>Exhbiit A</u>, J. Stein Dec. ¶11.  Although Dr. Stein never gave her explicit permission to do so, he also never told her she could not do so.  Therefore, she reasonably believed that her status as a spouse, coupled with the shared nature of the computer and the history of sharing passwords, allowed her to do so in April 2018.  This fact alone precludes summary judgment in plaintiffs' favor on their CFAA claim.  The Southern District of New York's decision in *Sell It Soc., LLC v. Strauss* is instructive in this regard.  2018 WL 2357261, at *1 (S.D.N.Y., Mar. 8, 2018) (Castel, J.).  In *Sell It Soc., LLC*, an online retail store brought a CFAA claim against a former employee who was alleged to have

23

improperly accessed a company database following termination. *Id.* In its motion for summary judgment, the retail store submitted evidence that the employee sent text messages acknowledging his termination but nevertheless knowingly accessed the databased after realizing that the store had neglected to suspend the employee's login credentials. *Id.* at 3. In opposition, the employee contended that he did not realize that he had been terminated until "four or five days after" he accessed the database. *Id.* at 4. Even though the employee admitted being told that he has been fired by the store's president, the employee also testified that the president later recanted that statement. *Id.* The employee also testified that he assumed he was still employed due to the lack of an exit interview. *Id.* In *Sell It Soc., LLC*, the court denied the retail store's motion for summary judgment, holding that the evidence was sufficient to create material issue of fact as to an essential element of the CFAA claim – *i.e.*, whether the employee knew that his access was unauthorized. *Id.* The same is true here.

**Second**, plaintiffs have failed to submit evidence that Mrs. Stein and her attorneys acted with an intent to defraud, which is an independent basis to deny summary judgment. Again, Ms. Calise came to Mrs. Stein's house to assist Mrs. Stein in deciding what family financial information was relevant to a potential divorce and to help her preserve and protect her interests by copying the information. Mrs. Stein clearly had a right to access that information – as well as a right to provide the Needle Defendants with access – regardless of where the information happened to be stored. An intent to defraud, however, requires the intentional invasion of the property interests of another. *See Davis*, 2019 WL

24

1367685, at *7.  Gathering one's own documents and providing them to one's own attorneys is irreconcilable with such intent.  That FAA PHI and/or FAA employee records were purportedly copied in this case does not alter the analysis.  Mrs. Stein testified that she had no idea that PHI had been copied until sometime the following year.  *See* Pl.'s Ex A, ECF No. 163, J. Stein Dep., at 135-36].  Nor was there any effort to specifically copy PHI.  Plaintiffs have presented no contrary evidence – nor even a contrary argument – on summary judgment, which is fatal to their motion.

III.   **SUMMARY JUDGMENT AS TO COUNT I SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF ESTABLISHING THAT THEY SUFFERED $5,000 OR MORE IN COMPENSABLE DAMAGES UNDER THE CFAA DURING A 1 YEAR PERIOD**

Even if there were no issues of fact regarding the matters set forth in the preceding sections, the CFAA claim nevertheless fails for the independent reason that plaintiffs have failed to carry their burden of establishing $5,000 or more in compensable damages during a one-year (1) period.  *See* 18 U.S.C. 1030(c)(4)(A)(i)(I).  Plaintiffs cannot establish liability as to their CFAA claim in the absence of this jurisdictional requirement, and as such, their motion for summary judgment should be denied.  *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 478 (S.D.N.Y., May 25, 2004) (Cedarbaum, J.), *aff'd*, 166 Fed. Appx. 559 (2d Cir. 2006); *accord Turner v. Hubbard Sys., Inc.*, 2016 WL 1046949, at *2-3 (D. Mass., Mar. 10, 2016) (O'Toole, J.) (civil CFAA claim necessarily fails where a plaintiff is unable to show compensable damages reaching the $5,000 threshold), *aff'd*, 855 F.3d 10 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 506 (2017).

25

The CFAA narrowly constrains those types of damages which constitute **compensable** damages under the act, and only compensable damages may be considered in determining whether the $5,000 statutory threshold has been met. Under the CFAA, compensable damages are limited those damages which relate to damage to, or the inoperability of, the accessed computer. *See, e.g.*, *New London Associates, LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 412 (S.D.N.Y., Apr. 11, 2019) (damage requirement not met where data was copied from plaintiff's computers, but neither computers nor the data were actually damaged or rendered inoperable); *Caro v. Weintraub*, 2010 WL 4514273, at *12 (D. Conn., Nov. 2, 2010), *adhered to on reconsideration*, 2011 WL 13234162 (D. Conn., Feb. 14, 2011). Investigatory costs are compensable only when they directly relate to the remedial costs of investigating the computer for damage, or remedying the damage. *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004), *aff'd*, 166 Fed. Appx. 559 (2d Cir. 2006). However, a plaintiff is not entitled to compensation for the expenses associated with investigating how the alleged hack occurred or implementing prophylactic measures to prevent future hacks. *Reis, Inc. v. Lennar Corp.,* 2016 WL 3702736, at *6 (S.D.N.Y., Jul. 5, 2016) (losses cannot be directed toward future intrusion); *Univ. Sports Publ'ns Co. v Playmakers Media Co.*, 725 F. Supp. 2d 378, 388 (S.D.N.Y., Jul. 14, 2010) (audit that sought to identify ways to improve the database's security system following a breach not recoverable under the CFAA); *Tyco Intl (US) Inc. v. Does*, 2003 WL 23374767, at *3-4 (S.D.N.Y., Aug. 29, 2003) (investigating nature of alleged hack and identity of hacker not compensable losses under the CFAA). Critically, the

CFAA *does not* permit the recovery of litigation costs. *See Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 736-37 (S.D.N.Y., Sept. 14, 2020) (Vyskocil, J.) *citing, inter alia, Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D.R.I. 2006) (Lagueux, J.) ("[T]he Court holds that, as a matter of law, the costs of litigation cannot be counted towards the $5,000 statutory threshold."), *aff'd*, 492 F.3d 50 (1st Cir. 2007).  And above all, only those costs which are *reasonably necessary* to assess and remedy damage stemming from an alleged breach may count towards the $5,000 threshold.  *See id.* at 735.

The District of Connecticut's decision in *Caro v. Weintraub* is illustrative of the distinction between compensable and non-compensable damages under the CFAA.  2010 WL 4514273, at *12 (D. Conn., Nov. 2, 2010) (Dorsey, J.), *adhered to on reconsideration*, 2011 WL 13234162 (D. Conn., Feb. 14, 2011).  *Caro* arose from a probate dispute between the plaintiff and his stepsons regarding the distribution of the plaintiff's late wife's estate.  *Id.* at *1.  During the probate proceedings, plaintiff commenced a parallel federal action against his stepsons alleging a plethora of wrongful conduct connected to the probate proceedings.  *Id.* at *1-2.  The plaintiff later moved to amend his federal complaint to assert a CFAA cause of action against his stepsons.  *Id.* at *2.  In support of the proposed CFAA claim, the plaintiff alleged, *inter alia*, that the stepsons accessed plaintiff's computer and deleted certain financial information without authorization.  *Id.*  As a result, the plaintiff alleged that he lost his inheritance from his wife and was denied the ability to collect on certain loans.  Those alleged losses greatly exceeded $5,000.  *Id.* at *10-11.  The stepsons opposed the motion to amend as

futile.  *Id.* at *8.  The district court agreed with the stepsons and denied plaintiff's motion, reasoning that:

> [a]lthough Plaintiff has alleged damages in excess of $5,000, *the damages have nothing to do with the costs incurred because of interruption of computer service or in assessing and remedying damage to Plaintiff's computer system*. Plaintiff essentially alleges that, due to [his stepson's] deletion of computer files containing evidence of [his wife's] loans to him and his brother, Plaintiff wrongfully lost his inheritance. He also claims that [his stepson's] actions somehow denied him half the value of the loans . . . . [However,] Plaintiff's lost inheritance or lost loan repayments are not cognizable losses under the CFAA. Therefore, Plaintiff cannot state a valid claim under the CFAA. Plaintiff's motion to amend his complaint to add a CFAA cause of action is denied as futile.

*Id.* at *12 (emphasis added).

In the present matter, plaintiffs have not submitted sufficient evidence to prove that they have incurred $5,000 or more in compensable damages under the CFAA.  Plaintiffs first point to a collection of invoices from Sylint Group, but these scant materials are insufficient to determine the specific work <u>actually performed</u> by Sylint Group – let alone whether that work constituted an assessment of the Subject Computer and/or its data for damage.  The billing entries contained in these invoices are simply too vague to carry plaintiffs' heavy burden on summary judgment.  Many are written in incomprehensible shorthand and appear to combine several tasks.  To that end, there is no declaration nor affidavit from a representative of Sylint Group expounding on the invoices or otherwise explaining the work they purport to represent.  Indeed, the invoices are not even authenticated by Sylint Group or plaintiffs themselves.[6]  Not only does

---

[6]  Because summary judgment is required to be supported by admissible evidence, *see Minto v. Connecticut State Police*, 2016 WL 5845193, at *2 (D. Conn., Sept. 30, 2016) (Bryant, J.), this Court should discount the Sylint Group

this deprive the Court of the ability to determine whether the work performed by Sylint Group was compensable, it deprives the Court of the ability to determine whether the work was "reasonable."[7] *See Dreni*, 486 F. Supp. 3d at 735.  And all of this precludes summary judgment in Plaintiffs' favor on their CFAA claim.

To the extent that any of the work allegedly performed by Sylint Group is at all discernable from the invoices, the bulk of such work is clearly *not* compensable under the CFFA.[8]  For example, the invoices contain time entries reflecting "[t]ask meeting," "[i]nternal project meeting," "[c]onference call with counsel," "[r]esearch," "[c]onf. call w/counsel," "[c]onf. call w/ counsel & case tasking," "[i]nternal project review with report to John," and "stein [r]epos and check in."  Pl.'s Ex. K, ECF No. 159-12, at 3, 6-11.  The aforenoted entries – which total $1,725.83 in billed fees – plainly do not reflect an assessment of the Subject Computer and/or its data for damage, and are therefore not compensable under the CFAA.  *See id*.  The four (4) Sylint Group invoices contained in Exhibit K total

---

invoices in considering whether plaintiffs have met the $5,000 statutory threshold.  Attorney Saffer's affidavit – which essentially only indicates that these invoices were produced during discovery – is insufficient for this purpose.

[7] Further to the question of the reasonableness of these charges, it must be noted that both plaintiffs' and plaintiffs' expert both testified that they are aware no evidence of any actual damage to any computer system and/or data at issue in this case.  *See* Exhibit C, B. Stein Dep. at 86, 97-98, 156-157; Exhibit H, Jorgensen Dep. at 79-81. This no evidence that the data at-issue in this action was accessed by anyone other than those individuals identified in the Special Master's report, and no evidence that the data at-issue in this action resides at any location other than those locations set forth in the Special Master's report.  *See* Pl.'s Ex. I (Special Master Report), ECF No. 159-10, at 7-20.

[8]  This argument is being made in the alternative; it is Mrs. Stein's position that the invoices are wholly insufficient to meet plaintiffs' burden in establishing the $5,000 threshold.  But even assuming, *arguendo*, that some of the time entries could be construed as reflecting an assessment of the Subject Computer and/or its data for damage, other entries indisputably do not.

only $6,565.82; subtracting the non-compensable entries from this figure reduces the total $4,839.99, which is of course below the required threshold.  Were that not enough to defeat Plaintiffs' CFAA claim on its own, at least three (3) other billing entries totaling $1,850.00 in fees block bill non-compensable teleconferences with counsel with other tasks.  Inasmuch as it is impossible to decern which portion of these entries reflect teleconferences with counsel versus other tasks, they cannot be counted towards the $5,000 threshold, either.

It must be noted that plaintiffs have confusingly comingled the four (4) individual invoices discussed above, *see* Pl.'s Ex. K, ECF No. 159-12, at 3, 6-11, with two (2) account statements, *id.* at 2, 12, in Exhibit K.  Each of the account statements appear to list a series of individual invoices by invoice number, but these statements include invoices <u>beyond the four (4) invoices actually contained in Plaintiffs' Exhibit K</u>.  Inasmuch as the account statements themselves contain no description whatsoever of the work performed by Sylint Group, they cannot support a finding that plaintiffs incurred more than $5,000 in <u>compensable</u> damages.  Again, there is no declaration nor affidavit from a representative of Sylint Group explaining the inclusion of these account statements or what work they purportedly reflect.  The basic same analysis also applies to the checks that are also included in Exhibit K.  *see id.* at 3-5.  Indeed, one of these checks contains the words "Expert Witness Fee" in the memo line, strongly suggesting that it reflects non-compensable litigation costs.  *See id.* at 5; *Dreni*, 486 F. Supp. at 736-37.

Plaintiffs also point to a declaration from counsel to Plaintiff FAA in an attempt to establish that the $5,000 threshold has been met.  *See* Pl.'s Ex. K, ECF No. 160, J. Levine Decl.  Such a contention is easily dispensed with.  In his declaration, counsel avers that he has provided legal services to plaintiff FAA in connection with its HIPAA reporting obligations, to wit: "filing the appropriate HIPAA breach notifications with [the Office of Civil Rights, U.S. Department of Health and Human Services (hereinafter, "OCR")], sending same to local print, radio and television media outlets and responding to the resulting OCR investigation, including assistance with respect to the requested compliance measures."  *Id.* ¶¶ 2, 4.  But these legal services bear no relationship whatsoever to any assessment of the Subject Computer and/or its data for damage, and are therefore not compensable under the CFAA.  *See Dreni*, 486 F. Supp. 3d at 736-37; *Caro* 2010 WL 4514273, at *12.  Even if these legal serves were compensable – which they are not – they would only apply to Plaintiff FAA, and not the Stein Plaintiffs.

## IV.  SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN OF ESTABLISHING OWNERSHIP OF SUBJECT COMPUTER

In addition to the CFAA claim, plaintiffs also seek summary judgment against the Needle Defendants pursuant to the Connecticut Computer Crimes Law – Conn. Gen. Stat. § 53-451, *et seq.* – which provides in the pertinent part as follows:

(a) Definitions. . .

**(14) A person is "without authority" when such person (A) has no right or permission *of the owner* to use a computer or such person uses a computer in a manner exceeding such right or permission. . . . . .**

**(b)  Unauthorized use of a computer or computer network. It shall be unlawful for any person to use a computer or computer network *without authority* and *with the intent to*:**
 **. . .**

**(6) Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs or computer software residing in, communicated by or produced by a computer or computer network . . .**

(emphasis added).  While § 53-451 is a criminal statute, § 53-452 provides a private right of action for "any person whose property or person is injured by reason of a violation of any provision of" the statute.

Initially, summary judgment as to Count II should be denied because plaintiffs have not carried their burden in establishing that any of them owned the Subject Computer at the time of the alleged access as required by the statute. See Conn. Gen. Stat. §53-451(a)(10).  Indeed, nothing contained in Plaintiffs' briefing, Rule 56(a)(1) statement, or any other aspect of their moving papers speaks to this required element of the statute at all.[9]  Without eliminating all issues of material fact as to the issue of ownership, plaintiffs cannot establish

---

[9]  The Declaration of Robert Manjoney does state that the Subject Computer had – what Mr. Mahoney terms – an "owner account," which appears to be Mr. Manjoney's description of what has been sometimes referred to in this case as Dr. Stein's subaccount.  *See* Pl.'s Ex. C, Manjoney Dec., ¶ 9, ECF No. 181 at 4.  But Mr. Manjoney's passing using of the word "owner" cannot possibly be sufficient to establish ownership under C.G.S. § 53-451(a)(10), particularly given the context the word is employed by Mr. Manjoney.

that the Needle Defendants acted "without authority" as defined by the statute. C.G.S. § 53-451(a)(14).

Moreover, Plaintiffs' submissions actually raise a question of fact as to whether the Subject Computer was marital property.  In Connecticut, the primary determination of what constitutes marital property is whether the item was acquired during the marriage.  *See O'Brien v. O'Brien*, 326 Conn. 81, 117-118 (2017) (unvested stock options earned during the marriage are marital property); *accord Jewett v. Jewett*, 265 Conn. 669, 683-85 (2003) (settlement proceeds from husband's lawsuit acquired during marriage properly deemed marital property).  Both real and personal property can be marital property.  *See, e.g. Levesque v. Levesque*, 2018 WL 4441065, at *8-9 (Conn. Super. Ct., Aug. 29, 2018); *Getman v. Getman*, 1993 WL 34525, at *2 (Conn. Super. Ct., Jan. 28, 1993).   Here, the Declaration of Robert Manjoney reflects that the Subject Computer was acquired during the Steins' marriage and that Mrs. Stein was permitted to use it.  Pl.'s Ex. C (R. Manjoney Dec. ¶ 9), *Dkt.* at 154-4, p. 4.  The fact that the Subject Computer was acquired during the marriage at least raises a question of fact as to whether it constituted marital property.  Moreover, any determination by the fact-finder that the Subject Computer constituted martial property would necessarily mean that Mrs. Stein *owned* the Subject Computer at the time of the alleged access.  As such, Mrs. Stein's access (including any access of the subaccount) could not possibly have been "without authority" under the statute's own definition.  In that circumstance, it would also necessary follow that Mrs. Stein had the actual authority to grant the Needle Defendants the same authority to access the

Subject Computer (including the so called "protected area"), thereby defeating Plaintiffs' Computer Crimes statutory claim.

## V.    MRS. STEIN DID NOT OWE A DUTY TO PLAINTIFFS, AND, EVEN IF SHE DID , SHE DI NOT BREACH SUCH A DUTY

Plaintiffs are not entitled to summary judgment on their negligence claim because Mrs. Stein did not owe a duty of care to plaintiffs under the circumstances of this case.  Moreover, even Mrs. Stein owed a duty of care, she could not have breached such a duty because it was not foreseeable, at the time the documents were copied, that PHI covered by HIPAA would be stored on the Subject Computer, let alone comingled with family financial documents.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . .   Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action . . . .   Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care." *Mazurek v. Great American Ins. Co.*, 284 Conn. 16, 29 (2007) (internal quotation marks omitted).

> The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand . . . We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case ... The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy.

34

*Neuhaus v. DeCholnoky*, 280 Conn. 190, 217-18, 905 A2d 1135 (2006) (internal quotation marks omitted).

"[The] first step in an analysis of whether a duty exists and the extent of the defendant[s'] duty ... is to determine the foreseeability of the plaintiff[s'] injury. . . . It is a well established tenet of our tort jurisprudence, however, that [d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable . . . .  [A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. . . .  Due care is always predicated on the existing circumstances." *Lachowicz v. Rugens*, 119 Conn. App. 866 (2010) (citations omitted; internal quotation marks omitted), *cert. denied*, 297 Conn. 901, 116 A. 923 (2010).

In the present matter, Mrs. Stein—and by extension, the Needle Defendants—could not possibly have owed plaintiffs a duty of care because the evidence demonstrates that, at the time when the computer files were copied by Ms. Calise, neither Mrs. Stein nor the Needle Defendants anticipated that patient PHI would be comingled amongst family financial information on a family computer that Mrs. Stein had free access to.  Plaintiffs, in their Motion for Summary Judgment, ignore the pertinent deposition testimony of Ms. Calise, Attorney Needle, and Mrs. Stein, which collectively demonstrate this fact.  *See* Pl.'s Ex. A, ECF No. 163, J. Stein Dep. at 90, 135-136; Pl.'s Ex. B, ECF No. 154, M. Needle Dep. 54-55; Pl.'s Ex. G, ECF No. 167, J. Calise Dep at 24-27).

Plaintiffs, in their Motion for Summary Judgment, misconstrue the deposition testimony of the Needle Defendants and Ms. Stein by asserting that

the Needle Defendants somehow owed a duty of care to Plaintiffs based on the following: (1) the alleged awareness that Dr. Stein was a physician; (2) Mrs. Stein's desire to preserve family financial located on the Subject Computer and Ms. Calise's assistance with the same; and (3) a subsequent discovery by Ms. Calise of an x-ray in the copied information. *See* ECF No. 158, Pl.'s MOL at 27-28. Plaintiffs then assert, in an utterly conclusory fashion, that "[i]t is clear that . . . foreseeability is satisfied in the test for establishing a legal duty." *Id.* at 28. But none of these contentions demonstrate whatsoever that that there was a foreseeable risk of copying patient PHI <u>at the time of the alleged access</u>. To that end, the fact that Ms. Calise recalled seeing an x-ray <u>after</u> the files were copied and brought to the offices of the Needle Defendants has no bearing on the analysis. *See* Pl.'s Ex. G, ECF No. 167, J. Calise Dep. at 64-66). Moreover, even if Mrs. Stein was aware that her husband was a physician, such knowledge does not demonstrate a duty of care, as this does not render foreseeable the fact that Dr. Stein stored FAA patient PHI comingled amongst family financial information on a computer freely accessible by Mrs. Stein.

At a minimum, there is a material issue of fact as to this issue. The deposition testimony discussed above demonstrates that Mrs. Stein had no reason to know that Dr. Stein kept patient records on a device to which other family members had password access. *See* Pl.'s Ex. A, ECF No. 163, J. Stein Dep., at 135-136).

Accordingly, Plaintiffs have not demonstrated that Mrs. Stein and the Needle Defendants owed them a duty of care, and even if a duty of care was

owed, the Needle Defendants could not have breached their duty because it was not foreseeable that FAA patient PHI might be inadvertently copied on the date in question.  At a minimum, there are material issues of fact as to these matters.  Accordingly, the Court should deny Plaintiffs' Motion for Summary Judgment with respect to their negligence claim.

## VI.  SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT III (NEGLIGENCE) BECAUSE MATERIAL ISSUES OF FACT EXIST AS TO PLAINTIFFS' COMPARATIVE NEGLIGENCE

Even if the Needle Defendants did breach a duty to Plaintiffs – which is denied – there are material issues of fact as to whether and to what extent Plaintiffs were contributorily negligent for the incident that forms the basis of their claims.[10]  Contributory negligence is a question of fact, and Connecticut courts have held that *any degree* of fault on the part of the plaintiff is sufficient to preclude summary judgment.  *See, e.g.*, *Schnelwar v. Stamford Hosp.*, 2020 WL 3791577, at *2-3 (Conn. Super. Ct., Jun. 1, 2020) (Provodator, J.T.R.) ("The level, if any, of the plaintiff's comparative negligence is a quintessential factual issue, for the factfinder to determine); *Turner-Caron v. Quitko*, 2004 WL 2439835, at *1-2 (Conn. Super. Ct., Sept. 28, 2004) (Thompson, J.) (denying plaintiff's motion for

---

[10]  Plaintiffs' contributory negligence is alleged by way of Mrs. Stein's Fourth Affirmative Defense.  See Answer, ECF No. 127, at 9.  Mrs. Stein recognizes that this Court, in ruling on the parties' competing motions to compel the other to bear the costs of the Special Master's investigation, ECF Nos. 113, 114, 115, 117 & 119, did determine that plaintiffs were not responsible for the subject incident.  ECF No. 122.  As noted above, however, that decision was rendered pursuant to Fed. R. Civ. P. 53(g)(3), which grants the Court broad discretion in allocating the special master's fees as amongst the parties.  *See Apponi*, 809 F.2d at 1220.  This Court's resolution of disputed issues of material fact and credibility determinations made in the context of that particular motion practice do not apply to Plaintiffs' motion for summary judgment made pursuant to Fed. R. Civ. P. 56.

summary judgment on basis that deposition testimony of plaintiff demonstrates "some degree of comparative fault on the part of the plaintiff," which creates a material issue of fact).

The question of plaintiffs' comparative negligence in this case first and foremost implicates a credibility determination as between Dr. Stein's and Mrs. Stein's competing version of events surrounding the use of the Subject Computer and the environment where passwords – including the password at-issue here – were freely shared as amongst family members.  It also implicates a credibility determination as between Mrs. Stein and Mr. Manjoney regarding the statements that Mr. Manjoney allegedly made to her regarding the Subject Computer.  Such a determination cannot be made on summary judgment.  Moreover, it is undisputed that Dr. Stein was using his so-called subaccount to store family financial information wholly unrelated to FAA.  *See* <u>Exhibit C</u>, B. Stein Dep. at 47-53, 136-139); <u>Exhibit E</u>, J. Stein Decl. ¶ 5 (Dec. 4, 2020).  The fact that Dr. Stein (then a member of FAA) was storing family financial information – which Mrs. Stein indisputably had the unfettered right to access – alongside patient PHI at a minimum raises a material issue of fact as to whether plaintiffs were contributorily negligent under the facts of this case.  To that end, Dr. Stein tellingly does not contest that he shared the password that permitted access to the so-called "subaccount" – which contained patient PHI – with his own teenage son.  *See* ECF No. 158, Pl.'s MOL at 8-9.  And, perhaps most significantly, we now know through the Special Master's investigation that Dr. Stein was storing PHI <u>locally on his computer</u>.  Pl.'s Ex. I (Special Master Report), *Dkt.* at 159-10, p. 19

("In summary, the FAA patient end employee records in control of Needle | Cuda <u>originated directly from the Stein home computer and not directly from the FAA SharePoint site</u>.") (emphasis added).   This is contrary to Dr. Stein's sworn testimony as well as Plaintiffs' stated position throughout the entirety of this case.  *See* <u>Exhibit C</u>, B. Stein Dep. at 113-114); ECF No. 1, Pl.'s Compl., Facts, ¶ 21; ECF Non. 73, Pl.'s First Am. Compl., Facts, ¶ 24, *Dkt.* at 73.  Viewing these facts in the light most favorable to the Needle Defendants, there is clearly a material issue of fact as to Plaintiffs' contributory negligence barring summary judgment.

## VII.   SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT III (NEGLIGENCE) BECAUSE THERE ARE MATERIAL ISSUES OF FACT AS TO THE APPORTIONMENT OF LIABILITY AMONG THE DEFENDANTS

Even if Mrs. Stein and the Needle Defendants breached a duty to plaintiffs – which, again, is denied – material issues of fact as to the apportionment of fault as among the Needle Defendants and Mrs. Stein bars precludes summary judgment on Count III.  In their motion for summary judgment, plaintiffs ask the Court to enter judgment "jointly and severally" against all Defendants on Plaintiffs' negligence count.  See Pl.'s Mot. at 31.  However, this misstates Connecticut law in that Connecticut has long abolished joint and several liability by Tort Reform I and Tort Reform II, and in particular, by Conn. Gen. Stat. § 52-572h.  *Collins v. Colonial Penn Ins. Co.*, 257 Conn. 718, 739 (2001).  Subsection (f)(4) of Conn. Gen. Stat. § 52-572h explicitly provides that <u>the fact finder</u> is required to specify the percentage of negligence that is attributable to each party whose negligent actions were a proximate cause of the damages alleged.  To that

end, Connecticut courts have held that the issue of proportional liability amongst tortfeasors is a question of fact that precludes summary judgment. *See, e.g.*, *Valente v. Securitas Sec. Serv. U.S.A., Inc.*, 2010 WL 2926225, at *2 (Conn. Super. Ct., Jun. 7, 2010) (Tierney, J.T.R.); *Reid v. Maldonado*, 2004 WL 2361685, at *1 (Conn. Super. Ct., Sept. 16, 2004) (Booth, J.).  Here, the Needle Defendants and Mrs. Stein are not similarly situated with respect to plaintiffs, and as such there are clear questions of fact as to the foreseeability of the harms allegedly caused by each "set" of defendants.  Plaintiffs here cannot circumvent proving their case against each of these defendants by (incorrectly) asking the Court to enter a judgment that says they are all "jointly and severally" negligent.  Such relief is simply not available in Connecticut, and indeed, Plaintiffs have cited no authority to the contrary.  The error in plaintiffs' request is made plain when one considers that, if plaintiffs were to somehow obtain summary judgment on their negligence count as against all defendants, <u>they would nevertheless still need to prove each of the defendants' proportionate share of liability at trial.</u>  This wasteful state of affairs is demonstrative of the fact that, in Connecticut, apportionment is inextricable from the question of liability as whole.  Accordingly, because questions of fact pervade the issue of apportionment between the defendants here, summary judgment should be denied.

## Conclusion

For each of the foregoing reasons, Mrs. Stein respectfully requests that the Court deny the plaintiffs' motion for summary judgment in its entirety.  Mrs. Stein and the other defendants should be permitted the opportunity to present their arguments to a jury, especially in light of plaintiffs' assertion that defendants knowingly and intentionally violated federal and state computer crimes statutes. No such thing occurred, and Mrs. Stein should be allowed to make her case to a jury of her peers.

Respectfully submitted,

*/s/ Robert M. Frost, Jr.*
Robert M. Frost, Jr. (ct 19771)

FROST BUSSERT, LLC
350 Orange Street, Suite 100
New Haven, CT 06511
Tel:        (203) 495-9790
Fax:        (203) 495-9795
Email:       rmf@frostbussert.com

Attorney for Defendant Jennifer Stein

## CERTIFICATION

I hereby certify that on this date a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Dated at New Haven, Connecticut on this 8th day of December, 2020.

*/s/ Robert M. Frost, Jr.*
Robert M. Frost, Jr.

42